## Marshall *vs.* Guion and Vultee.

The corporation of the city of New-York, pursuant to the statute (2 *K. & R.* 126, § 3) which provides for the construction of the street or wharf called *South-street*, granted to different individuals parcels of land under water fronting on the site of that street which the grantees were to fill up and level, with the right to construct the street, and to receive to their own use the wharfage arising therefrom, the conditions of which grants were performed by the grantees. *Held* that the corporation could not thereafter, under the authority which it possessed to construct and enlarge public slips and basins, construct a pier abutting on that street, at the expense and for the use of the city.

The corporation having, in 1821, in conjunction with the proprietors of adjacent lots, constructed a pier abutting on South-street opposite the premises so granted, and divided the right to wharfage between the corporation and the proprietors of lots, and the proprietors having acquiesced in such decision for more than twenty years; *held* that such acts and acquiescence did not authorize the corporation, in the year 1842, to erect an addition to the said pier, extending a further distance into the river.

In executing the authority conferred by law upon the corporation to construct piers and bridges upon the default of the parties who had been required to construct them, the notice required by the statute (4 *Webs.* 514, § 5) must be addressed to the proprietors of the lots upon whom the duty rests and who are entitled to the benefit of the erection, and not to the owners of an existing wharf which it is proposed to extend by sinking the new pier.

And such notice must require the proprietors to commence the work at a time fixed upon and to contribute to the expenses as they accrue; and a notice requiring them to signify to the street commissioner their intention to join with the corporation in the work, is unauthorized and illegal.

And the resolution of the common council and the notice to the proprietors should state truly the extent of the proposed work; and where a pier was constructed ninety feet long, under a resolution and notice contemplating one seventy-two feet in length, *held* that it was irregular, and that the corporation acquired no rights by it.

Marshall v. Guion.

ERROR to the common pleas of the city and county of New-York. Marshall brought replevin against Guion and Vultee in the court below for two mahogany sofas, alleged to have been taken from the ship England, lying at a wharf in the city of New-York, on the 16th day of June, 1843. The defendants pleaded *non cepit ;* and put in an avowry and cognizance in which they set up that Guion was the owner of the end of the wharf or pier known as No. 23 on the northeasterly side of Fulton slip, by virtue of the demise from the mayor, aldermen and commonalty of the city of New-York, of the rates and fees accruing from vessels (except boats, of less than five tons burthen) which should lie at the wharves or piers belonging to the corporation within a certain district on the East river, embracing the wharf or pier No. 23, (which it was alleged belonged to the corporation,) for one year from May 1st, 1843, to May 1st, 1844; that the sum of $20,25 was at the said time when, &c. due and in arrear to Guion for wharfage of the ship England, on account of her having been made fast at said wharf or pier from the 1st to the 17th day of May, 1843 ; and that Vultee, being a deputy of the sheriff of the city and county of New-York, as the bailiff of Guion, under a regular distress warrant and affidavit, distrained the sofas, being on board the England still lying at said wharf or pier, for said wharfage ; wherefore Guion well avowed and Vultee well acknowledged the taking, &c. as and for and in the name of a distress, &c. Verification. Marshall replied, taking issue on the averment that Guion was the owner of the wharf mentioned in the avowry and cognizance, and concluded to the country.

The cause was tried in the court below on the 20th February, 1844. The taking of the sofas as alleged was admitted, and it was shown that the ship England had lain at the pier No. 23 during the time for which wharfage was claimed ; a part of the time at the end of the pier, and for the remaining part on the northeasterly side, against what was called the new part or extension of the pier then recently made. Regular proceedings to distrain were proved, the only question litigated being the right of Guion to the wharfage of that part of the pier where

Marshall *v.* Guion.

the England had lain. The pier in question was shown to be 30 feet wide and to extend into the East river 345 feet from the easterly or river side of South-street. It was constructed to the extent of 255 feet in 1821; the remaining 90 feet, against which the England lay, was built in 1842. The part which was constructed in 1821 was built at the joint expense of the corporation and of the proprietors of the ground lying opposite; the corporation having paid one third, and the proprietors the residue of the expense.

The defendants' counsel gave in evidence a resolution of the common council, adopted the 14th day of May, 1840, providing for the extenston of several piers on the East river, and among others pier No. 23, which it was resolved should be extended 72 feet, all of which works, it was said, are " to be completed on or before the first day of September next, under the direction of the street commissioner ; and he is hereby directed to take the necessary legal measures to effect the object of this resolution." The defendants also gave in evidence a resolution of the common council, adopted September 16th, 1841, which was to the effect that pier No. 23, East river, should be extended in accordance with the resolution just mentioned, " at the expense of the city and for the benefit of the said corporation, if upon the expiration of the notice mentioned in the 232d section of the act entitled ' An act to reduce the several laws relating to this city of New-York into one act,' passed April 9, 1823, the private owners of the easterly half of said pier shall have neglected to signify their willingness to contribute their proportion of the expense according to law." The publication of the notice referred to was then proved. It was dated July 23, 1841, directed to " all the proprietors of the easterly half of pier No. 23, East river," and signed by the street commissioner. It stated that the corporation had determined to extend that pier, 72 feet into the East river, and that unless the said proprietors, within six weeks from the date of the notice, should signify in writing to the street commissioner their intention to join with the corporation in constructing the extension referred to, and should contribute their proportion of the expense thereof, as de-

signated by law, that they would thereby perfect their rights in the wharfage arising therefrom, agreeably to the act of the legislature in that case made and provided. After the expiration of the time mentioned in the notice, the corporation contracted for the construction of the extended pier, and the same was done at their expense. It was made 90 instead of 72 feet long, as mentioned in the resolution and notice. The defendants then proved and gave in evidence their lease from the corporation, dated April 25, 1843, which was to the effect stated in the avowry, and rested.

The plaintiff proved that the proprietors of water grants and wharfage adjacent to the pier had remonstrated against and opposed the proceedings by which the same was extended, as a violation of their legal rights as such proprietors. The plaintiff then gave in evidence a grant by the corporation to D. Ludlow and others, executors of Robert Cromeline, dated January 17, 1804, of a certain "water lot, vacant ground or soil under water to be made land and gained out of the East river, as represented on a certain map, being 50 feet in breadth on Front and South streets, and about 148 feet long from street to street, subject to a yearly rent of fifty dollars, the lessees covenanting to construct and keep in repair a wharf or street to be called South-street, of the width of 70 feet in front of the premises granted, and extending the whole breadth thereof; in consideration whereof the corporation granted to them in fee for their own use," all manner of wharfage, crainage, advantages and emoluments growing or accruing by or from the said wharf or street called South-street, fronting on the East river, opposite to the premises granted. The plaintiff then proved divers grants from the corporation of lands under water fronting on South-street above and below the lot granted to Ludlow and others, of about the same date with that grant; the whole of the premises thus granted extending from Fulton slip to Peck slip; and that South-street, between these slips, was constructed by the private owners of water lots, pursuant to these grants, as early as 1810. South-street was built outside of the 400 feet beyond low water mark which was granted to the city by the

charter of 1730. He also proved that the lot granted to Ludlow and others had been taken for Beekman-street, which was laid out over it to South-street in 1817, and that pier No. 23 was directly in front of that part of Beekman-street which covered the premises so granted to Ludlow and others. In respect to the construction of the pier, as it existed before the extension in 1842, the plaintiff gave in evidence certain resolutions of the common council showing that the business was undertaken pursuant to the act of the legislature, and that the common council resolved to pay one-third, and required the proprietors of water lots to pay two-thirds of the expense, and that the corporation were to receive the wharfage and slippage arising on the southwesterly side, and one-half of that at the head of the pier, according to the provisions of the statute ; and it was admitted that the corporation and the proprietors actually contributed to the expense in these proportions. It appeared that Fulton slip, which was on the southwesterly side of the pier in question, was a public slip, and that the corporation collected to their use the wharfage on that side of the pier. Before the pier was constructed, the proprietors of water lots under the grants which have been mentioned, collected the wharfage arising upon South-street opposite the water lots granted them. After the construction of that part of the pier which was built in 1821, the wharfage on the northeasterly side and on the whole of the end of the pier was collected by the proprietors of the water lots lying opposite, and after the extension of the pier in 1842, the question as to the wharfage of the new part seems to have been in dispute, the proprietors getting what they could, and both parties—the agents and lessees of the corporation and the proprietors—forbidding shipmasters to pay their dues to the other party. An agent of the proprietors had forbidden the plaintiff to pay the dues in controversy in this suit to the defendant Guion. It appeared that the suit was prosecuted by the proprietors of the grants of water lots, to try the right to the wharfage which Guion claimed under the lease from the corporation.

The plaintiff's counsel requested the court to hold and charge

1. That the corporation had no right to extend the pier as they had done in 1842, and that by doing it they acquired no right to wharfage.   2. That the charter conferred no right, as the grant contained in it did not extend beyond South-street. 3. That they had no right under the statutes of this state, as the act of 1801 prescribed a uniform plan for these improvements from which they could not depart.   4. That the grant to Ludlow and others, and the other similar grants made in 1804, conferred upon the grantees the right to wharfage in front of the premises granted, of which they could not be divested by any act of the corporation.   5. That the proprietors acquired rights by the construction of the pier in 1821 which could not be interfered with or defeated by the construction of the extension of the pier.   6. That the proceedings of the common coun cil under which the extension was made were illegal and void, first, because the *ayes* and *noes* were not taken on the passage of the resolution and published ; and, secondly, because the resolutions and the notice contemplated an extension of 72 feet, whereas the pier was actually extended 90 feet.   The court refused to hold or instruct the jury as requested, but, on the contrary, charged them that by the proceedings pursuant to which the pier was extended, and the neglect of the proprietors to join therein, the corporation acquired the right to the wharfage arising therefrom, which they might lawfully assign to another.   The plaintiff's counsel excepted.   There was a verdict for the defendants, upon which judgment was rendered against the plaintiff.

*A. H. Dana,* for the plaintiff in error.

*P. A. Cowdrey,* for the defendants in error.

*By the Court,* JEWETT, J.   The material question in this case is whether the portion of the pier No. 23, which was completed in 1842, belongs to the corporation of the city of New-York.   It is not questioned but that the plaintiff owed wharfage to the owner of that part of the pier ; nor but that the distress

Marshall *v.* Guion.

was regular and legal, provided Guion, as the lessee of the corporation, was entitled to such wharfage; nor is it denied but that Guion's right was perfect if the corporation owned the pier.

By the charter of the city of New-York, granted by Governor Montgomery, in 1730, the corporation became entitled to all the land under water in the East river from Corlaer's Hook to Whitohall, extending four hundred feet into the river beyond low water mark, together with certain rights and privileges, including wharfage, crainage and dockage. (*Kent's City Charter*, p. 86, § 38.) The corporation having prior to 1798 granted to individuals all the land under water which they acquired by their charter, in that year applied to the legislature for an act empowering them to construct streets and wharves in front of the water lots already granted. An act on this subject was at that time passed which was re-enacted in 1801. By this statute the mayor, aldermen and commonalty were authorized to regulate and alter the wharves and slips of the city in such manner as should be most commodious for shipping and navigation. (2 *K. & R.* 126, § 1.) If in laying out wharves or slips they should require the ground of any person, they were to treat with such person, and if they failed to agree, the damage and recompense of the owner were to be assessed by a jury, as particularly provided, upon which the ground might be converted to the purposes required. (§ 2.) Authority was given to lay out " according to a plan agreed upon for that purpose, regular streets and wharves of the width of seventy feet in front of those parts of the said city, which adjoin to the East river or Sound and to the North or Hudson's river, and of such extent along these rivers respectively as they may think proper," and to extend the same in length from time to time as the city should be built up along the rivers. (§ 3.) These streets or wharves were to be built at the expense " of the proprietors of land adjoining or nearest and opposite to the said streets or wharves, in proportion to the breadth of their several lots," and where the nearest lots did not adjoin the wharf, the owners were required to fill up the spaces between the lots and the wharf, upon doing which and levelling the same they were respec-

tively entitled to the said intermediate spaces of ground in fee simple. (§ 4.) If the proprietors of the nearest lots should neglect to fill up and level these intermediate spaces, the corporation was directed to do it at their expense, which was to be collected by distress and sale, or by action of debt. (§ 5.) It was declared to be lawful for the corporation " to direct piers to be sunk and completed at such distances and in such manner as they in their discretion shall think proper in front of the said streets or wharves," to be connected by bridges with the streets or wharves, " at the expense of the proprietors of the lots lying opposite to the places where such piers shall be directed to be sunk." If the proprietors should neglect to construct the piers directed to be built, the corporation was to do it at their own expense, " and to receive to their own use wharfage for all vessels that may at any time or times lie or be fastened to the said piers or bridges which they shall so make as aforesaid." (§ 7.) The corporation were authorized to grant " to the owners of lots fronting on any of the said streets of seventy feet, their heirs and assigns, a common interest in the piers to be sunk in front of such streets, in proportion to the breadth of their respective lots, under such restrictions and regulations and within such limits" as the corporation should deem just and proper. (§ 8.) It was under this act and the grants made by the corporation in 1804, that South-street was laid out and constructed in front of this part of the city. It was built wholly at the expense of the grantees, and they by the terms of the grant became entitled to the wharfage upon that street opposite the lots respectively granted to them.

By the act " for the better government of the city of New-York," &c. passed April 2, 1806, it was recited that from the great increase of the city and its trade, it had become necessary to provide additional wharves, piers, slips and basins for the accommodation of vessels; wherefore it was enacted that the corporation might cause piers to be sunk and basins to be made at their own expense, and might " take to their own use the slippage and wharfage arising from the same, any law usage or custom to the contrary notwithstanding; *provided always,* that nothing herein contained shall be construed **to**

deprive any persons who may have made piers by the directions of the said mayor, aldermen and commonalty, in pursuance of" the act of 1801, " of any legal right which they may thereby have acquired, or to interfere with any private property or right or privilege held under grants of the said mayor, aldermen and commonalty, or otherwise." (4 *Web.* 514, § 1.) The corporation is authorized to enlarge any of the slips in said city when they deem it for the public good, and on paying one-third of the expense of the necessary piers and bridges, they shall be entitled not only to the slippage upon the side next to the slip, but to one-half of the wharfage to arise at the outermost end of the piers. (§ 2.) Where persons who shall have been directed to construct piers and bridges according to the act of 1801, have neglected or shall neglect to do so, the corporation may grant the right to construct them, and the profits thereof to any other person in fee or otherwise, upon such terms as they shall think proper. (§ 3.) Where any of the proprietors of lots opposite to points where piers have been or may be directed to be sunk under the act of 1801, have refused or shall refuse to join with the other proprietors of lots in constructing the work, the corporation may be substituted for the delinquent proprietors, and be entitled to the proportion of wharfage which would have belonged to the delinquents if they had performed. (§ 4.) Notice that piers are to be constructed may be given by publishing it for six weeks in two newspapers; and any proprietor who shall not commence the work by the time fixed, or who shall not contribute his part of the expenses as they accrue. shall be deemed to have refused to comply with the directions. (§ 5.) The act " to reduce several laws relating particularly to the city of New-York into one act," passed April 9, 1813, (2 *R. L.* 342,) embodies the substance of the foregoing enactments, and under the provisions of §§ 224 and 230 of this revised act, which embrace the material parts of § 7 of the act of 1801, and § 2 of the act of 1806, the corporation professed to proceed in constructing the extension of the pier No. 23, in the year 1842. That pier was originally built in 1821, to the length of 255 feet; but it was not done pursuant to the first section of the

act of 1806, or of section 228 of the revised act, which is the same identical provision re-enacted. Though the object of the city authorities may have been to form a public slip or basin opposite the Fulton market, the pier was not constructed at the public expense; nor could it have been placed in the spot where it was constructed under the authority of the provision referred to, as it would have violated private rights acquired and held under previous grants from the corporation. Nor was it constructed under the provisions of § 230 of the revised act, as that section only authorized the enlargement of slips already existing, by extending the piers which formed their sides. Conceding that the individual proprietors are concluded by the circumstances under which the pier was erected, and the lapse of time and subsequent user and acquiescence from questioning the location of the pier, or the right of the corporation to the wharfage and slippage on the southwesterly side, and to the wharfage at the outer end of the pier, in accordance with the opinion of the vice chancellor in *Verplanck* v. *The Mayor, &c.* (2 *Edwards,* 220,) concerning which it is unnecessary to express an opinion; still this shows no authority for the claim now set up to the wharfage arising from the new part of the pier constructed in 1842. The powers of the corporation under the acts referred to, extend to four different subjects—wharves, piers, slips and basins. Under the charter and subsequent grants the corporation had no right to the land comprising South-street or the pier in question. By the act of 1801, they were made the agents of the state to vest a title in the riparian owners of the land between these grants and South-street, by filling it up and levelling it, and constructing South-street, with the incidents of wharfage on the extension of South-street; but the title did not vest in the corporation even if the owners had omitted to entitle themselves to it by complying with the conditions.

In this view of the question the right of the corporation to the wharfage upon the extension built in 1842, depends upon their having acquired that right by taking the necessary legal steps under some of the statutes referred to. This they have

Marshall *v.* Guion.

failed to do. The notice was wrongly directed. It was "to the proprietors of the easterly half of the pier." The laws did not recognize any such class of persons. The direction should have been to the proprietors of lots lying opposite to the place where the pier was to be sunk. It was probably done under the idea that the persons who received the wharfage on that side were the owners of the easterly half of the pier. The same persons are proved to have likewise taken the wharfage at the outer end, and if such acts were evidence of title to the land, the same persons who owned the end also owned the easterly side. The difficulty is that the statute does not provide for the building of a *second* pier. When the owners of the lots fronting on the street built the first pier, the corporation was authorized to grant it to them. But if after the pier is constructed the ownership of the adjacent lots and the right to the pier become separated and vested in different individuals, which class is to build the addition to the pier? and to whom are the corporation to convey the common interest in the additional pier? The owners of the original pier would not necessarily or probably be the owners of the lots fronting on the street. The corporation can hardly be authorized to call on those to build the pier to whom they can grant no interest in it; and if there is no person whom the corporation can direct to make the pier, there can be no failure or delinquency on the part of any one which can authorize the corporation to construct it themselves. The corporation is authorized to construct the pier and become entitled to the wharfage on the failure of the proprietors to do it. But they acquire no interest in the piers themselves, though they have a right to convey the interest which the state has in them to the owners of lots fronting on the street. Besides, it is very doubtful how far the legislature meant to allow the corporation to interfere with the vested rights of wharfage, incident to building the first pier. A construction which would allow such interference is not to be favored, particularly if no means are provided for indemnifying the persons who lose the wharfage. A right to wharfage could only accrue to the corporation by the default of the proprietors to build; and be-

sides, the statute provides that the piers should be connected with the street. The notice is defective in another respect. The owners are required to commence the work by the time fixed and to contribute to the expenses as they shall accrue. (*Act of* 1806, § 5, *supra.*) This notice requires them to signify their intention to join with the corporation in building the extension and to contribute their respective proportions of the expense. This was an entirely different act, and if the notice corresponded with the resolution, they were both wrong. The pier contemplated by the resolution and notice was to be seventy feet in length. It was actually built ninety feet. Such a departure was wholly unauthorized and cannot be sustained upon any principle. If the right of the corporation to extend an existing pier and have the wharfage on the default of the proprietors after proper notice to build be conceded, still this extension must be regarded as unauthorized for the want of a proper resolution and notice under it. (*Sharp* v. *Speir,* 4 *Hill,* 76.) It follows that the corporation had no right to wharfage either on the northeasterly side or the end of the new part of the pier No. 23, and that the judgment of the common pleas must be reversed.

Judgment reversed.