VERPLANCK v. THE MAYOR, ALDERMEN and COMMONALTY
of the city of New York.

A person taking out a water-grant from the corporation of the city of New York for a lot of fifty feet in front on the river and binding himself to construct a wharf or bulk head along the entire front of the grant and thereupon being entitled to all the emoluments accruing from it, does not deprive himself of the right to any portion of the wharfage by dedicating a part of the lot to the public for the purposes of a street or passage.

The owner of upland to which wharfage or other incorporeal hereditament attaches is entitled to all such incorporeal right, so long as he retains the ownership of the soil.

A giving to the public of a perpetual right of way over the land, without an actual grant or conveyance of the land, is not a relinquishment of any of his rights incident to the fee.

The owner of a bulkhead or wharf against which a pier is placed, becomes entitled to his proportion of wharfage arising from the pier in common with the owners of the bulkhead who contribute to the building of the pier for the purpose of forming a slip or basin.

Construction of the statute in relation to wharves, piers and slips and of the powers of the corporation thereunder ( 2. R. L. of 1813. 431, § 224, 225, 228, 230.)

1834.        Bill to establish a right to wharfage from a portion of a slip
December 3. on the westerly side of the pier at the foot of Beekman Street
  Wharf.    in the city of New York ; and, for an account of the Wharf-
age received by the defendants.

In the year one thousand seven hundred and fifty, the then Mayor, Aldermen and Commonalty of the city of New York granted to Robert Crommeline for ever, subject to an annual quit rent, a certain water lot, to be made land and gained out of the East River, bounded northerly by Water Street and extending southerly into the East River, containing in breadth on Water Street as well as in the rear on the East River or harbour fifty feet and in length two hundred feet. The grantee was to construct, upon the outward part of the lot, a wharf or street of forty feet in width and which should for ever thereafter continue and be a public street. In consideration whereof, the grantee his heirs and assigns were, at all times, to enjoy, take and hold, to their own use, all wharfage which should arise or accrue from the wharf so to be made. One

Robert Livingston was a grantee, upon like terms, of a sim-
ilar lot adjoining the westerly side of that granted to Crom-
meline. These parties filled in their respective lots and con-
structed a wharf at the extremity of their grants; and, by
an indenture under their hands and seals, dated the third day
of December one thousand seven hundred and sixty two, they
agreed to open a public street over a part of their lots and
thereby (and for this purpose) each of them relinquished
twelve feet of the width of their ground, " in order to make
a commodious public street of twenty four feet wide, leading
from Water Street down to the new wharf fronting to the East
River. The public street so to be made to be called and
known by the name of Crane Street."

The street of forty feet in width, reserved in the grants
from the corporation and being at the extremity of the lots
and adjoining the river afterwards formed a part of Front
Street.

In the year one thousand seven hundred and ninety one,
Robert Crommeline died, seized of the property. He had
made a will with several codicils; and appointed Daniel
Ludlow, Gulian Verplanck, Francis Lewis and Daniel C. Ver-
planck, his executors; giving power to them or any two of
them to sell and dispose of all his real estate, if they should
judge it necessary, for the purpose of facilitating a division
of the same amongst the devisees, but without devising the es-
tate or any part of it to the executors in trust or vesting them
with a legal title. They all qualified as executors.

While the pre-emption, in respect to the water lot contiguous
and extending further into the East River, still belonged to the
estate of Robert Crommeline, the corporation of the city of
New York, by an indenture bearing date the seventeenth day
of January one thousand eight hundred and four, granted to
Daniel Ludlow, Francis Lewis and Daniel C. Verplanck,
describing them as surviving executors " of the will of Rob-
ert Crommeline, deceased, and to their heirs and assigns for
ever, the water lot between Front Street and South Street fif-
ty feet in width and extending in length from Front Street to
South Street—as by a map of the block of ground, surveyed Ju-
ly 26th 1803. by a city surveyor, to which reference being had
would more fully appear." This grant was subject to an an-

1834.

VERPLANCK
v.
CITY OF N. Y.

nual quit rent of fifty dollars. The deed contained the usual covenant for payment of the rent; a clause for re-entry in case of default; a covenant that the grantees their heirs or assigns would build a good and firm wharf or street of seventy feet breadth, to be called South Street, in front of and contiguous to the south easterly end of the lot thereby granted, which should remain a public street or highway; and the grantees their heirs or assigns, upon paying the rent and fulfilling the covenants therein contained, were, at all times forever thereafter, to take and hold, to their own use, all manner of wharfage, cranage, &c. to accrue by or from the said wharf or street of seventy feet in breadth fronting on the East River opposite to the premises thereby granted. Under this grant, the lot from Front Street to South Street was filled in, while South Street and the wharf were constructed, and Crane Street was extended to South Street the same width as from Water Street to Front Street. The map to which the grant referred and upon which the lot was delineated, showed that a space of twelve feet was intended, for the purpose of continuing such street and that only thirty eight feet of the fifty, in the width of the lot, were to be occupied.

Under an act of the legislature, passed March 14. 1817. the corporation of the city of New York had become possessed in fee simple of the site on which Fulton Market is erected, as the same was bounded by Fulton Street on one side and Crane Street or (as sometimes called) Crane-wharf on the other, and also of the wharves and piers in front of the market and contiguous to South Street.

In the year one thousand eight hundred and twenty one, the proprietors of water lots and wharves in front of South Street, between Crane-wharf Street and Peck Slip, petitioned the corporation to have a pier built in the East River in front of Crane-wharf Street. A resolution to the following effect was passed: " that a pier be built in the East River at the foot of Crane-wharf Street of such dimensions and in such manner as should be directed by the committee on wharves, piers and slips and street commissioner: provided the proprietors of water lots between Crane-wharf Street and Peck Slip bear and pay two third parts of the expense thereof."

Under the authority of this resolution, a pier was built.

The testimony showed it to be usual for the corporation to bear one third of the expense of constructing piers where they own or are entitled to the water on one side or when the pier to be built formed one side of a public slip. In this instance, their object was to have a slip on the westerly side of the pier and in front of Fulton Market. Instead, however, of placing the pier, which was thirty feet in width, directly at the foot or in front of Crane-wharf Street, as mentioned in the resolution, the committee who had it in charge, located the same on the easterly side of the foot of the street, so that it occupied thirty feet of the bulk-head or wharf built by the executors of the Crommeline estate in front of their grant, exclusive of the twelve feet thrown into Crane-wharf Street and leaving the bulk-head and the water immediately in front of Crane-wharf Street, including the twelve feet before mentioned, to form a part of Fulton Market Slip on the westerly side of the pier.

In consequence of thus locating the pier and while the same was building, the subject of apportioning the expense was again brought before the common council, upon the petition of a number of the proprietors of property on the eastern side of the pier, suggesting that, as the pier was built upon private property and inasmuch as private property remained on the western side, the petitioners ought not to pay more than one half the expense of building it. The report of a committee of the corporation, founded upon what they understood to be the law and usage in similar cases, stated that, although the pier was erected in front of private property, yet the owners of such property were to be indemnified, by taking wharfage and slippage along the easterly line and along one half of the head of the pier in common with other individuals owning fronts and in proportion to the water-front which they had at the time of locating the pier. And a resolution was accordingly adopted by the common council, declaring the parties liable to pay one third part only of the expense of erecting the pier ; and that when it was finished, they would be entitled to all wharfage and slippage on the westerly side of the pier and to one half of the wharfage arising at the head or outer end of the pier. By this act, the corporation assumed to be the proprietors of the whole

wharfage and slippage on the westerly side of the pier in the same manner as if the pier had been placed directly opposite to the foot of Crane-wharf Street and as if the centre of the street and pier had formed one continuous line. If the pier had been thus placed, Fulton Market Slip would have been narrower by twenty seven feet than it is now; whereas, by the present location, the corporation have gained so much in the width of their slip, while, on the opposite side, the slip or basin belonging to individual proprietors is, to the same extent, contracted.

In the year one thousand eight hundred and twenty two, the subject again came before the corporation: and the present complainant then presented a memorial respecting the water-rights of the proprietors and requested payment from the corporation for the privilege of wharfage for the bulk-head between the centre of the pier and a point opposite the western boundary of the grant belonging to the Crommeline estate—being the twenty seven feet above mentioned. The common council again resolved that the individual proprietors of the property in front of which the pier was erected, including the land which laid to the westward of the middle of the pier, as far as the westerly line of the water grant made to Crommeline as well as that which was situated on the easterly side of the centre of the pier, were to be indemnified for the loss of bulk-head occasioned by the building of the pier, by taking wharfage and slippage along the whole length of the easterly side of the said pier and on the head or outer end of the same in proportion to the loss of bulk-head which they had sustained and in common with other persons interested therein.

It appeared, from the testimony of the wharfinger, that, in behalf of the individual proprietors interested in the bulk-head and pier, he had collected the wharfage on the easterly side of the pier and at the outer end of the same and which he had divided and paid over to them from time to time in proportion to the extent of their ownership of the bulk-head: except to the complainant, who had only been allowed to receive his proportion, with other proprietors, upon about twenty three feet of the bulk-head excluding him from any participa-

tion as respected the part of it which was to the westward of the centre of the pier.

The street commissioner stated in his testimony, as the reason why one third of the expense was borne by the corporation, that the pier was to be the boundary of a public slip and it could not have been located more advantageously for the individual proprietors, and it would be no advantage to the corporation to have the space between this pier and the next (to the eastward of it) wider than the same is now ; that the slip between them was designated for ships of heavy burthen and is of the proper width and is used for that purpose. The witness also proved that the establishment of a public slip in front of private property is considered a full equivalent for the surrender of wharfage by the proprietors on account of the benefit it is to their estate ; and there are numerous instances where individual proprietors are at the expense of making and maintaining piers for the advantage of having the corporation slips in front.

Hence arises the claim now made upon the defendants.

Mr. *W. H. Harison* and Mr. *G. F. Talman* for the complainant.

Mr. *M. Ulshœffer* and Mr. *Robert Emmet* for the defendants.

THE VICE-CHANCELLOR :—It has been made a point in the cause whether the grantees, by accepting the grant upon the understanding of dedicating twelve feet to the public as a street and occupying the residue only for private purposes, could afterwards claim wharfage for any more than thirty eight feet of the front or southerly side of South Street. By the terms of the grant, they were bound to construct the wharf at their own expense and make South Street, along the entire front of fifty feet. This has been done. The deed declares them entitled to all the emoluments accruing from the wharf or street fronting on the river opposite to the premises and every part thereof. This right to wharfage upon the whole extent of fifty feet is thus, in terms, secured, although it was intended, by all parties, that a strip of twelve feet of land should be sacrificed to the public.

*July 7.*

Crane Street extended no further than to the northerly line of South Street and so far the sacrifice was made ; but it did not carry with it a relinquishment of the right to collect wharfage at the bulkhead on the southerly side of South Street and this right remained upon the whole extent of the bulk-head, notwithstanding a part of the lot was given up to public use.

The owner of upland to which wharfage or other incorporeal hereditament is appendant, may apply it to any use or purpose he thinks proper ; and, so long as he retains the ownership of the soil, he will be entitled to all such incorporeal right. A giving to the public of a perpetual right of way over land, without an actual grant or conveyance of the soil, is not a relinquishment of any rights which the giver might have as incident to the fee. In the present case, there is nothing in the mere dedication of a portion of the lot between Front Street and South Street to the public for a street which can, in my opinion, impair the right of the grantees to the wharfage or other emoluments to be derived from the use of the water and bulk-head in front of the grant.

The right of the estate of Crommeline to wharfage upon the whole extent of his front of fifty feet, seems to have been conceded by the defendants. The principle upon which the reports of their committee and the resolutions of their board proceeded, admit that the owner of a bulk-head or wharf against which a pier is placed, is not, thereby, deprived of wharfage. Instead of wharfage at the bulk-head within the space occupied by the pier, his wharfage accrues from the use of the pier ; and as there are a number of individual proprietors who contribute to the expense of building the pier and who are interested in the slip or basin formed by the bulk-head and piers, they become tenants in common of the revenue arising from the use of it and this revenue or income is apportioned among them according to the extent of each party's ownership in the front or bulk-head. In the present case, if the pier had been placed so as to have left no part of the bulk-head or wharf belonging to the Crommeline estate to the westward of the pier, then there would have been no difficulty. But, in consequence of the manner of locating the pier whereby a part of the bulk-head is comprised

within Fulton Market Slip, the question is : whether the corporation have a right to refer the complainant or the devisees of the Crommeline estate to the outer end of the pier and to the easterly side thereof for all the wharfage which the whole extent of their bulk-head entitles them to receive?

1834.

VERPLANCK
v.
CITY OF N. Y.

This point involves an enquiry into the powers of the corporation concerning public docks or slips and the location and construction of piers. Several acts of the legislature have been passed upon the subject; and they are now consolidated in the general law of 1813. (2. R. Laws, of 1813. p. 431.) The 224. and 225.§. relate to the building of piers as private property ; and the corporation are vested with authority to direct piers to be sunk and completed at such distances and in such manner as they, in their discretion, shall think proper and by such time as they shall appoint, at the expense of the proprietors of the lots lying opposite to the places where the piers shall be directed to be sunk, and then to grant to the owners of lots—meaning such as shall contribute to the expense— a community of interest in the piers to be sunk in proportion to the breadth of their respective lots, under such restrictions and regulations and within such limits as the corporation shall deem just and proper. Now, all this is only a mere power which the corporation have to exercise. They acquire no interest or ownership in the piers here spoken of, unless the individual proprietors of the lots fronting towards the river refuse or neglect to construct the piers. In such an event, the corporation may proceed to do the work at their own expense and then become the owners and receive the wharfage for all vessels lying at the piers or they may grant the right to others of making such piers and of receiving the wharfage. In the case of *The Corporation of N. Y.* v. *Scott*, 1. Caines R. 543. it was held, under the authority of these sections, as they were contained in the act of 1801. (2. Kent & Rad. 129. §. 1. 8.) that the corporation could not reserve or take to themselves any wharfage arising from a pier built at the expense of individuals, nor any slipage on the side of such pier adjacent to a public slip but not contiguous or on a line with the side of the slip. This decision was made in the year one thousand eight hundred and four. Two years afterwards the legislature passed an amen-

datory law, which granted additional powers and rights to the corporation: 4. Webster & Skinner's ed. 514. The parts of this amendatory law most applicable take in the 228th. and 230th. § of the general law of 1813. And by the first of these, the corporation were authorized, at their own expense, to cause public basins to be formed and had power to take to their own use the wharfage and slipage, provided it did not deprive persons, who might have made piers by direction of the corporation, of any legal rights which they might have thereby acquired or interfere with any private rights of property or privileges held under grants of the corporation. The present, is not a case within this section: because, although the object of the corporation was to form a public slip or basin opposite to Fulton Market, they did not construct the pier in question at their own expense—nor, indeed, could they have done so, placing it where they did, without infringing private rights acquired and held under previous grants from them. Then, as to the 230. §., which declares that in all cases where the corporation shall think it for the public good to enlarge any of the public slips, they have full power to do so; and also, that upon paying one third of the expense of building the necessary piers and bridges, they shall be entitled to the slipage of the side of the piers adjacent to the slips and also to one half of the wharfage to arise from the outermost end of the piers. This section, as its words import, was intended to apply to the case of public slips already formed which the corporation might be desirous of enlarging by an extension of the piers or by sinking new piers at the sides of the mouth of the slips. And I do not see how, according to its literal meaning, it can authorize the making of a public slip in the first instance by sinking a pier or piers against the bulk-head or wharf opposite to private property.

But the difficulty still remains. The corporation appear to have proceeded upon the principle in this section precisely as though the case were within it; and the individual proprietors appear to have assented or, at least, acquiesced in this mode. They agreed to contribute two thirds of the expense of building the pier and the corporation the remaining third. It was erected upon such terms. The parties could not have

1834.

VERPLANCK
v.
CITY OF N. Y.

expected the corporation to assume and bear one third of the expense upon any other ground than that the westerly side of the pier was to be a public slip. There was no inducement for them to engage in the work upon these terms in case the pier, when built, was to be deemed entirely private property or individuals were to participate with them in the emoluments of the public slip on the westerly side. Nor was there any necessity, for the sake of public convenience, in having a pier constructed that the corporation should contribute to the expense of building one to belong exclusively to the owners of the contiguous upland. The statute gives the corporation a power of becoming owners or interested in piers in all cases where circumstances render it necessary for them to contribute to the expense. I must presume all parties were cognizant of the law and that, when the proprietors submitted to the terms and proceeded to build the pier at the joint expense of themselves and the corporation, they mutually understood the case to be one within the spirit, if not within the letter, of the 230. §. I consider, under the circumstances and from the fact of permitting the corporation to contribute one third of the expenses, that the individual proprietors must be deemed to have given a practical construction to this part of the statute from which they are not now at liberty to depart.

It is said, however, that even if such would be the consequence, still it could only be so, provided the pier had been actually located and built where the resolution of the corporate board purported it should be, namely, at the foot of Crane-wharf Street; and that, by placing it on the easterly side and not directly opposite or at the foot of the Street, the corporation have been guilty of a mislocation, which gives them no right to the portion left clear on the westerly side and within the slip or basin. I do not perceive how the alleged mislocation can make any difference. All the parties interested in the pier must be presumed to have had a knowledge of its location from the time it was first sunk; and they could not but have seen its position in reference to Crane-wharf Street. And yet, with this before them, they permit the work to go on, without objection, and leave the corporation to pay one third of the expense and bear only two thirds

themselves ( for there is no testimony to show they ever offered to pay any more.)   If any of the individual proprietors intended to claim both sides of the pier as private property on account of the manner in which it was located, then they were bound to pay and should have offered to pay the whole expense of the building ; and if this had been done, perhaps they, who thus paid the whole amount, would have been entitled to the whole of the wharfage arising from both sides of the pier.   Since, however, they have left the corporation to pay their proportion, under the principle in the 230 §. of the statute, notwithstanding the location of the pier and so as to leave a part of what was private property within the public slip, I am of opinion it must be deemed a case within this section and that the right to wharfage and slipage on the westerly side of the pier became vested exclusively in the corporation.

According to the evidence of Dr. Graves, which is uncontradicted, no injury or injustice will be done to the Crommeline estate or to any of the persons interested in the pier by considering all the part of the bulk-head situated westward of a line drawn lengthwise through the middle of the pier as having been relinquished to the corporation by the locating and manner of building it : at least, so far as regards the wharfage or slipage in the public slip of which the pier was intended to form the eastern boundary.

No right exists in favor of the complainant or the representatives of the Crommeline estate to any wharfage or slipage accruing on the westerly side of the pier ; and the corporation are entitled to all such wharfage to their own use—the same being a public slip.

The bill must be dismissed, with costs.