(41 Misc. Rep. 134.)

### In re CITY OF NEW YORK.

(Supreme Court, Special Term, New York County. June, 1903.)

1. NAVIGABLE WATERS—PIERS—OWNERSHIP—NEW YORK CITY.

    Under Laws 1798, p. 255, c. 80, as re-enacted by Laws 1801, p. 308, c. 129, vesting authority in the city of New York to direct piers to be sunk at the instance of proprietors of fronting lots, and to grant them a common interest in proportion to the breadth of their lots, and, on the proprietors' refusal to erect the piers, authorizing the city to make piers at its own expense, and to receive the entire wharfage to its own use, the city of New York and other owners of Pier Old No. 24, East river, are, as between themselves, tenants in common, and not owners in severalty of the pier structure, its surface user, and the wharfage from its outermost end, but own in severalty the wharfage from its sides.

2. SAME—EMINENT DOMAIN—CONDEMNATION OF RIGHTS—AGREEMENT WITH OWNERS.

    Greater New York Charter, § 824 (Laws 1901, p. 354, c. 466), provides that in all proceedings for the acquirement of an interest of a person or corporation who is an owner in common or a joint tenant with the city of any wharf property, rights, terms, easements, etc., it shall not be necessary for the commissioner of docks to make any attempt to agree with the owner on a price before commencing condemnation proceedings authorized by section 822. *Held*, that under such section the city was entitled to proceed to acquire all the rights of joint owners of the structure, user, and wharfage of a pier, without first attempting to agree with such owners as to the price to be paid therefor.

**8. SAME—WHARFAGE FROM SIDE OF PIER.**
Where a pier and the right of surface user and wharfage from the end
were jointly owned by the city of New York and other owners, the several
ownership of the right of wharfage from the sides of the pier was a mere
incident of the joint ownership.

Application by the city of New York, through the commissioner of
docks, for the acquisition of rights of wharfage in and to Pier Old
No. 24, East river, in the borough of Manhattan. Application to
annul the proceedings. Application denied.

Huntington & Rhinelander, for F. W. Stevens and other claimants.
William Mitchell, for D. B. Ogden and another, as trustees, etc.
W. P. & R. K. Prentice, for C. A. McCready.
Geo. V. N. Baldwin, for K. C. Mead and others.
Duer, Strong & Whitehead, for M. A. Elder.
Guthrie, Cravath & Henderson (William E. Verplanck, of counsel),
for Benjamin S. Wells and other claimants.
Henry L. Bogert, for claimant Kneeland.
Geo. L. Rives, Corp. Counsel (Theodore B. Connoly and Charles
D. Olendorf, of counsel), for city.

LEVENTRITT, J. This is an application to annul and vacate
certain proceedings had by the city of New York, through its dock
commissioner, for the acquisition of such rights in the pier known
as "Old No. 24" as were in owners other than itself. The proceed-
ings had progressed to the stage of taking a large amount of testi-
mony before the commissioners of estimate and assessment, offered
both on behalf of the city and the present objectors, before this ap-
plication was made. The ground of objection is jurisdictional. It
is claimed that the proceedings were initiated under a wrong section
of the charter, and that the omission to take a necessary preliminary
step renders all subsequent acts jurisdictionally defective.

Briefly stated, the individual proprietors claim that their interest,
on the one hand, and that of the city, on the other, partake of the
nature of a tenancy in severalty, and that therefore proceedings
should have been had under section 822 of the charter (Laws 1901,
p. 354, c. 466), which requires that before taking condemnation pro-
ceedings the city should make an attempt to agree with private own-
ers upon a price for their interest. This section provides that the
commissioner of docks is authorized to acquire any and all wharf
property to which the corporation then has no right or title, and any
rights, terms, easements, and privileges pertaining to any wharf prop-
erty. Acquisition may be made by purchase or process of law, but
by the latter means only after an attempt to reach a private agree-
ment. The individual proprietors or claimants maintain that the city
of New York was the owner and in possession of the northeasterly
half of this pier, and that they collectively were the owners and in
possession of the southwesterly half, and that each of said owner-
ships and possessions was distinct and separate.

This proceeding has been brought under section 824 of the charter,
which provides that in all proceedings for the acquirement of the
interests of a person or corporation who is an owner in common or

a joint tenant with the city of New York of any wharf property, rights, terms, easements, etc., it shall not be necessary for the commissioner of docks to make any attempt to agree with the owner upon a price before commencing the condemnation proceedings authorized by section 822. The city claims that its ownership with the individual proprietors collectively is joint, and that section 824 applies.

There are certain minor questions involved on this motion, but it will be necessary to treat at length merely the fundamental one outlined. The issue is clear. The objectors claim that they own the southwesterly half of the pier exclusively; that the city has no interest therein, and that, to acquire a valid title thereto, the same proceedings must be had as in the case of a piece of private dock property; that the first requisite toward such acquisition is the preliminary attempt to treat or agree with the owners; that this requisite has not been complied with; and that therefore the proceeding is fatally defective. Against this claim of an ownership in severalty of a half of the pier the city sets up a claim of a joint or common proprietorship, and ownership not of a several half, but of an undivided half in each.

I have found the solution of the question not free from difficulty. Such doubt as I have had has arisen from the fact that it is not, nor can be, disputed that at certain portions of the pier the right to wharfage is severally in the city, and at other portions is severally in the individual owners; that these rights are exclusive, and not subject to interference one by the other. If this proceeding were merely for the condemnation of the several rights to wharfage arising at one portion of the pier, as an incorporeal hereditament, I should be compelled to hold section 822 applicable. In reaching the conclusion that the proceeding is well brought under section 824, I have been determined by the fact that, though the wharfage at a part may be the exclusive property of the individual proprietors, the proceeding is for the condemnation of that of which this particular wharfage right is merely an incident, and that as to the rest, both so far as structure and other wharfage rights are concerned, the ownership is joint.

The pier was originally constructed in 1809, and extended in 1849. The original construction was pursuant to the city's plan to extend piers at right angles from the permanent streets into the rivers. Legislation was invoked, as there was doubt as to the precise rights of the corporation against the fronting lot owners. Chapter 80, p. 255, of the Laws of 1798, was the first statute applicable. This was substantially re-enacted in 1801 by chapter 129, p. 308, of the laws of that year, which also added certain new provisions. The gist of these earlier acts was to vest authority in the city to direct piers to be sunk at the expense of the proprietors of fronting lots, and to grant them a common interest in proportion to the breadth of their lots; and upon the proprietors' refusal to erect the piers the corporation was authorized to make piers at its own expense and to receive the entire wharfage to its own use. Section 8, p. 310, c. 129, of the act of 1801, provided:

"That it shall be lawful for the said mayor, aldermen and commonalty to grant to the owners of lots fronting on any of said streets, * * * their heirs and assigns, a common interest in the piers to be sunk in front of such streets in proportion to the breadth of their respective lots."

While this community of interest had reference, probably, primarily to the rights which the lot owners should acquire inter sese, it is important as showing the purpose of the Legislature that where there was joint sharing of expense there should be a resulting joint or common interest or ownership in the piers. This interest in the piers was something distinct from the right to wharfage. It follows, in principle, that where a construction should be undertaken, not by the corporation alone or the owners alone, but under circumstances where the corporation should become a contributing member to the expense of the erection of the pier, it would acquire a community of interest with the other sharers of the expense. Section 8 was in full force and effect when the act of 1806 was passed, which is the specific statute under which this pier was erected in 1809 and extended in 1849. Section 1 of chapter 126 of the Laws of 1806 provided that the corporation might, at its own expense, sink piers as it thought eligible between Whitehall Slip and the east side of Exchange Slip, and might also, at its own expense, cause such other public basins to be formed as it deemed necessary, and to take to its own use the slippage or wharfage arising therefrom. Section 2, which is the section here primarily applicable, provided:

"That in all cases where the said mayor, aldermen and commonalty should think it for the public good to enlarge any of the slips in the said city, they should be at liberty and have full power so to do, and upon paying one-third of the expense of building the necessary piers and bridges, shall be entitled not only to the slippage of that side of the said piers which shall be adjacent to such slips respectively but also to one-half of the wharfage to arise from the outermost end of said piers."

Section 4 of the act provided:

"That in all cases where any of the proprietors of lots lying opposite to the places or streets where piers shall have been or may be directed to be sunk, pursuant to the powers contained in the act last aforesaid, shall neglect or refuse to join with the other proprietors in sinking and making such piers and the bridges thereunto appertaining or to pay his or their portion of the expenses thereof, then and in every such case the said mayor, aldermen and commonalty may at their election join with the other proprietors in making and finishing the said piers and bridges, and shall become entitled to the proportion of the wharfage which the said proprietors so neglecting or refusing, would have been entitled to if they had joined in making the said piers and bridges."

Pursuant to this act, and under resolutions adopted by the common council in 1809, the first portion of the present pier was constructed, and the expense borne jointly by the city and the fronting lotowners. In 1849, again under the original act—the provisions remaining practically unchanged under the revision of 1813 (page 435, c. 86, § 230)—the pier was extended to its present length, under a further resolution of the common council, and again the expense was borne jointly, one-third by the corporation and two-thirds by the private owners.

In considering now the interests acquired by the several parties to this proceeding, we must treat separately of two elements, even as they are separately referred to in the various acts applicable to the

construction of piers: First, of the piers themselves; secondly, of the wharfage rights arising therefrom. So far as the structure itself is concerned, the city and the private owners became joint proprietors. This is irrespective of any statute, and merely on general principles of law. That the Legislature, however, contemplated community of interest where there was community of expense, has already been adverted to, in discussing section 8 of the act of 1801. Even though the land under water on which the pier was erected was not in the city, but in the state, at the time of the construction, the nature of the ownership the parties had as between themselves is thereby not altered, whatever their rights may have been as against the state. Nor is the nature of this ownership affected by the fact that the city's docks and wharves are part of its street system, and subject to such easements as the public has therein. As between themselves—that is, between the city and the private owners—they owned the pier, as a structure, jointly. The right to use the surface of the pier was likewise a joint right. It must be borne in mind that a grant of the wharfage is in no wise a grant of the wharf or pier itself. Eastman v. Mayor, 152 N. Y. 468, 46 N. E. 841. While the right to collect wharfage is an incorporeal right incident to the use of a wharf or pier (Id.; Mayor v. Mabie, 13 N. Y. 151, 64 Am. Dec. 538), the right per se carries no interest in the structure. This structure, then, in which the city and the private owners had a joint interest, was wharf property, within the meaning of section 824, as to which the city seeks to acquire the interest of persons who hold jointly or in common with itself.

Now as to the wharfage: We are treating here merely of an incorporeal right incident to the use of the pier. The Laws of 1806 very clearly defined in whom these rights to emolument should be. The city, upon paying one-third of the expense, should be entitled not only to the slippage or wharfage on the side of the pier adjacent to the extended slips, but also to one-half of the wharfage to arise from the outermost end of the piers. While section 2 is silent as to who should pay the other two-thirds of the expense, the defect has been supplied by construction.

In Marshall v. Guion, 11 N. Y. 461, the court says:

"I think the remainder of the section is intended to provide that if the private owners will contribute two-thirds of the expense of a pier, constructed with a view to enlarge a slip, such owners shall be entitled to all the emoluments arising from the wharfage, except that at the side next the slip and one-half of the end; that in that event the corporation shall contribute one-third of the expense, and have the emoluments arising at the places last mentioned." Page 475.

Whether we treat this pier as an entirely new construction from the beginning, or as a mere enlargement of the slip, the rights of the respective parties would be the same. Verplanck v. City of New York, 2 Edw. Ch. 220, 230.

The result of sharing the expense of construction was therefore to vest in the city the exclusive right to all the wharfage on the side of the public slips, and to vest in the private owners the exclusive right to all the wharfage on the other side. That these interests in wharfage were several and distinct cannot be gainsaid. The city

had no voice in fixing the wharfage, and no share in collecting it, on
one side; the private owners none on the other. The right was a
property right vesting exclusively in the several owners. Not so,
however, with the wharfage arising at the end. The statute does not
give the city or the private owners the wharfage to arise from half
the outermost end, but grants "one-half of the wharfage to arise
from the outermost end"—in other words, an undivided half. The
reason for this would seem to be quite obvious. A pier such as
the one under consideration is long and narrow. Wharfage fees are
controlled in part, at least, by the length of the vessels using the
piers. The great majority of vessels mooring at the end would lap
over the half, and thus make it difficult, if not impossible, of comput-
ing the basis of division—of determining how much of one several
half was utilized, how much of the other. At the sides there could
be no overlapping; at the ends there would necessarily be. Hence
one reason for dividing the wharfage equally, by giving a common
interest in the entire end, or an undivided half to each. Thompson
v. Mayor, 11 N. Y. 115, 121, clearly recognizes the claim that, so far
as the wharfage at the outermost end is concerned, the city, under
a construction similar to this, would become a tenant in common
with the private owners.

We have, then, this situation: The parties to the proceeding are
all joint owners, as among themselves, so far as the pier structure is
concerned; they are joint owners so far as the surface user of the
pier is concerned; they are joint owners in the wharfage emoluments
arising at the outermost end of the pier; and they own severally the
wharfage emoluments arising from the two sides of the pier. Now,
what the city seeks to acquire in this proceeding is the sum total
of all these rights and interests, so far as they are in private owners.
It seeks to acquire their shares in the wharf property, consisting of
structure, user, and wharfage. So far as the pier is concerned, as
distinct from the wharfage, it seems to me quite clear that the owner-
ship is joint, that the tenancy is common. It is this pier that is
primarily being condemned. The wharfage is an incident, inseparably
bound up with the pier. The pier cannot be condemned without con-
demning the wharfage. If there is no pier, there is no wharfage. If
the sole object of acquisition were the wharfage right on the souther-
ly side of the pier—that is, if the city sought to acquire, for some
reason or other, only that, and nothing more—there would be some
force to the contention that it was taking exclusively private wharf
property, within section 822 of the charter. Here the object of
acquisition is primarily a portion of joint property, as to one of the
incidents of which there is a several ownership. The city wants, for
the purposes of water-front improvement, the private owners' in-
terest in the pier as a whole. As an inseparable part of the joint own-
ership, at least, for the purposes of condemning all the private own-
ers' interest in the pier, there is a portion of the wharfage in which
the city has no share. But this is an incident of the joint ownership,
and in one aspect a part of it. The very most that the private own-
ers could claim is not that this proceeding is totally defective, but
that it must fail so far as it seeks to reach the wharfage rights at

one side of the pier. Even if it would fail to this extent, it would be effective to acquire the wharfage rights at the end, and the interest in the structure and its surface use. But I am of the opinion that it should not fail, even partially; that to so construe sections 822 and 824 would be narrow and technical, and removed from the underlying legislative intent. I am of the opinion that, where a several right is acquired as part of or incident of a larger joint ownership, procedure under section 824 is justified. To measure the wharfage right at one side by previous private agreement, separate and distinct from all other rights in the pier, would accomplish no practical purpose, would probably be met by the claim that all the various interests in the pier are interwoven and inseparable, and would, no doubt, still require the condemnation of the joint interests. As I read section 822, it calls for the previous attempt to agree where there is a sole, separate ownership, and it does not apply where a several right in a part is merely one of the elements of a larger joint ownership.

The manner of use made of the pier I do not consider very material. While the payments of taxes and insurance might be relevant evidentiary facts, important under certain aspects in determining nature and quality of ownership, where such facts are the sole guide, they do not so appeal to me here, where the legal status is otherwise clearly established. Nor does the claim that there has been partition of the common interests into interests in severalty seem to me to be well founded. Oral partition, while, of course, legally permissible, must be based on a clear intent to effect such a division—a clear purpose to effect a change in the ownership. Mere occupancy in severalty may be quite consistent with a tenancy in common. The acts proved are insufficient to permit such an inference of intent as is necessary to support the claim.

The other points raised I find without merit. The motion should be denied. The order hereon should be settled on one day's notice.

Motion denied.