THE PEOPLE'S TRUST COMPANY, as Trustee under a Mortgage
Executed by THE BROOKLYN AND ROCKAWAY BEACH RAIL-
ROAD COMPANY, Respondent, *v.* LOUIS R. SCHENCK, as
Administrator of JOHANNA SCHENCK, Deceased, Appellant,
Impleaded with Others.

**Mortgage — lien of mortgage given by railroad company — after-
acquired lands under water.**

A railroad company mortgaged certain property then owned by it, and
all other property which might thereafter be acquired in connection
with its construction and operation, or as convenient or necessary for
its uses or purposes.  It thereafter acquired, by grant from the state,
lands under water in front of and adjacent to its upland.  The referee
found that the company had, for the purpose of attracting travel upon
the road, developed its property by the erection of hotels and places of
amusement, that the land under water was acquired for, and is to be
used for the same purpose to which the upland was put and that it was
necessary for the operation of the railroad and in carrying on its busi-
ness.  *Held*, that the lien of the mortgage upon such lands is superior
to that of a judgment recovered subsequent to the mortgage.

*People's Trust Co.* v. *B. & R. B. R. R. Co.*, 121 App. Div. 604, affirmed.

(Argued May 17, 1909; decided June 1, 1909.)

APPEAL from a judgment of the Appellate Division of the
Supreme Court in the second judicial department, entered
October 10, 1907, affirming a judgment in favor of plaintiff
entered upon a decision of the court on trial at Special Term.

This action was brought to foreclose a mortgage, which was executed and delivered by the Brooklyn and Rockaway Beach Railroad Company to the plaintiff, as trustee, to secure the payment of an issue of bonds.  The appellant here is the defendant Schenck, who claims that the lien of a judgment recovered by him against the company is superior to that of the mortgage, as to certain land subsequently acquired by the latter.  The Brooklyn and Rockaway Beach Railroad Company was organized in 1863 and, within the authority of its articles of association, was maintaining and operating, at the time, a railroad from the city of Brooklyn to a terminus on Jamaica bay and a ferry from that terminus to Rockaway Beach.  The mortgage was made in 1891.  In the years 1894 and 1897, by grants from the land commissioners of the state, the company acquired certain lands under the waters of Jamaica bay in front of and adjacent to its upland.  In 1899 the defendant Schenck recovered his judgment against the company.  The court, at Special Term, held the lien of the judgment to be inferior to that of the mortgage and its decree has been unanimously affirmed by the Appellate Division, in the second department.  The defendant Schenck then appealed to this court.

The grant in the mortgage to the plaintiff included, with the railroad and ferry properties and franchises, and lands now owned and appropriated for the purposes of the railroad, " all other property, real, personal or mixed  *  *  *  which may hereafter be acquired  *  *  *  in connection with the construction, operation, maintenance  *  *  *  of the said railroad  *  *  *  or as convenient or necessary for the uses or purposes thereof.  *  *  *  Together with all improvements or additions made, or to be made, to any or all of said property  *  *  *  and, also, all and every other estate, interest, property, or thing, which the said party of the first part owns or holds, or may and shall hereafter acquire and hold, necessary or convenient for the use, occupation, operation and enjoyment of said railroad  *  *  *  and rights, privileges and franchises, or any part or portion thereof."  **The**

referee, to whom it had been referred to ascertain, among other things, the property covered by the mortgage and the situation of the mortgaged property, found that "said railroad is only operated during the summer months; the land, which it owns at Canarsie, (on Jamaica bay), is at the terminus of its railroad; it has erected thereon hotels and various places of amusement and for attraction for summer and other visitors, such as shooting galleries, merry-go-rounds, picture galleries and other places of amusement of the kind found at summer seaside resorts.   *   *   *   All these structures were erected and maintained for the business of said railroad to attract custom and as a necessary source of income. That the land upon which these stand and all adjacent property are needed for their purposes and as its necessary terminals.   Said railroad has also obtained several grants for the land under water adjoining the upland which it owns. That it uses all this land in connection with its terminal." He further finds " that all the real estate   *   *   *   which, also, includes   *   *   *   the said grants of lands under water acquired after the execution of the mortgage, are all necessary, proper and convenient for the maintenance and operation of the railroad and the business of said Brooklyn and Rockaway Beach Railroad Company."

*Rufus O. Catlin* for appellant.   The lands under water acquired after the making of the mortgage were not included within the terms of the mortgage.   The same is also true of the upland. (*Armstrong* v. *Du Bois*, 90 N. Y. 102; Short on R. R. Mort. §§ 204, 209; *M. V. R. R. Co.* v. *C., St. L. & N. O. R. Co.*, 58 Miss. 846; *B. & N. Y. A. L. Co.* v. *Coffin*, 50 Conn. 150; *Parish* v. *Wheeler*, 22 N. Y. 494; *Seymour* v. *C. & N. F. R. R. Co.*, 25 Barb. 284; *Calhoun* v. *M. & P. R. R. Co.*, 2 Flippen, 442; *N. O. P. Ry. Co.* v. *Parker*, 143 U. S. 25; *Dinsman* v. *R. & M. R. Co.*, 12 Wis. 649; *S. V. R. Co.* v. *Livermore*, 47 Penn. St. 465; *Walsh* v. *Barton*, 24 Ohio St. 28.)   The lands under water, when acquired by the railroad company, did not become an appurtenance to

the adjacent uplands. (*Ogden* v. *Jennings,* 62 N. Y. 531; *Armstrong* v. *Du Bois,* 90 N. Y. 102; *Woodhull* v. *Rosenthal,* 61 N. Y. 382; *N. O. P. R. Co.* v. *Parker,* 143 U. S. 42; *Abbott* v. *Curran,* 98 N. Y. 665; *M. L. Ins. Co.* v. *Voorhis,* 71 Hun, 117; *Archibald* v. *N. Y. C. & H. R. R. R. Co.,* 157 N. Y. 574.)

*George W. Wingate* for respondent. The findings are fully sustained by the evidence and establish that the lien of the plaintiff's mortgage attached to these lands under water as soon as they were granted to the railroad by the state. (*Archibald* v. *N. Y. C. & H. R. R. R. Co.,* 157 N. Y. 574; *N. Y. C. & H. R. R. R. Co.* v. *Eldridge,* 135 N. Y. 94; *Blakeslee Co.* v. *Blakeslee's Sons,* 129 N. Y. 155.) The legal presumption is that after-acquired lands are necessary for the company and are properly acquired, and a mortgage covering all the property already or afterwards to be acquired is valid in respect to the after-acquired property against all persons except purchasers for value without notice. (*Stevens* v. *Watson,* 4 Abb. Ct. App. Dec. 302; *Yates* v. *Van De Bogert,* 56 N. Y. 526; *Rumsey* v. *N. Y. & N. E. R. R. Co.,* 133 N. Y. 79.)

GRAY, J. I think the determination made below of the question of priority of liens, as between the appellant's judgment and the corporate mortgage to the plaintiff, is correct. There is no question but that subsequently-acquired property may be subjected to the lien of a mortgage, (*Bear Lake & R. W. W. & Irrigation Co.* v. *Garland,* 164 U. S. 1–15), and whether the land under the waters of Jamaica bay, which was subsequently acquired by the railroad company, was comprehended within its mortgage is a matter to be determined from the language of the instrument and by the appropriateness, or the necessity to the company, of the subsequent acquisition. Was the land within the purview of the mortgage, and was it something, which, when acquired, would, in connection with the operation of the railroad, be necessary to the full enjoy-

ment of the corporate franchises and add to the legitimate
earning power of the corporation? The company operated
its franchises under peculiar conditions and circumstances;
for, as the fact is found, its railroad ran, only, during the sum-
mer months and, then, mainly, to reach the waters of a great
bay of the ocean and, through a connecting ferry, an ocean
beach. To attract travel upon the road, it had developed its
terminal properties upon the bay by the erection of hotels and
of places for the amusement of visitors. The land under water
was acquired and is to be used for the same purpose, to which
the upland was put. The corporate project and purpose, per-
haps, differed in these respects from those usually associated
with the operation of railroads; but that is not the test. It
may be quite true that neither the land in question, nor the
upland, was necessary for the mere operation of the railroad.
If they were, however, prospectively necessary, or convenient,
for the uses, or purposes, of the railroad and to the enjoyment
of the corporate rights and franchises, they would come within
the terms of the mortgage. It is not necessary that there
should be an immediate connection with the operation of the
road. It is sufficient if, for the promotion of travel and the
increase of the business sought to be created, the land acquired
is legitimately convenient or necessary. The right to promote
the comfort, convenience and pleasure of the public, who
might patronize the railroad, and thus to augment its business,
has been recognized as one not foreign to a railroad purpose.
(See *Prospect Park & Coney Island R. R. Co.* v.
*Williamson,* 91 N. Y. 552.)

When we come to consider the question of convenience, or
necessity, we reach a question of fact which has been conclu-
sively determined by the unanimous affirmance of the findings
of the referee. He has found as facts that the hotel and other
structures were " maintained for the business of the railroad to
attract custom "; that " the land upon which these stand, and
all adjacent property, are needed for their purposes " and that
the company uses its upland and the land under water granted
by the state " in connection with its terminal." He finds that

the "grants of land under water, acquired after the execution of the mortgage, are all necessary, proper and convenient for the maintenance" of the railroad and business of the company. The claim, that the location of these findings in the referee's report made them legal conclusions, is without force. If, in formulating his report, the referee commingled facts and legal conclusions, it is immaterial. A finding of fact cannot be made a conclusion of law by labelling it. as such. What the referee was to do was to report the facts upon the question with his opinion.

It is settled, therefore, that the acquisition of the land under water was convenient and necessary for the profitable maintenance of the railroad and, in view of the peculiar character of the business sought to be built up, it is evident that the control of the land is important, if not essential, to the company; in order, not only, that the facilities, or terminal attractions, may be augmented, but that the land shall not come into the hands of those, who might be unfriendly, or whose management might affect unfavorably the character of the place.

There is a further consideration, which militates in favor of the plaintiff's contention, and that is that the right to acquire the land under the waters of the bay was appurtenant to the ownership of the upland. The land was not appurtenant to the upland and it would be incorrect to say that it passed with it as belonging to it under the term used of "appurtenance," (see *Woodhull* v. *Rosenthal*, 61 N. Y. 382, 390; *Ogden* v. *Jennings*, 62 ib. 526, 531); but the right to acquire it was appurtenant to the upland. This has been expressly decided. It was held that "the power conferred on the commissioners of the land office only authorizes a conveyance of lands under water to be made to the owners of the upland." (*E. G. Blakslee Mf'g Co.* v. *The E. G. Blakslee's Sons Iron Works*, 129 N. Y. 155, 159 ; *N. Y. C. & H. R. R. R. Co.* v. *Aldridge*, 135 ib. 83, 94.) In them, alone, is vested the right, or privilege, to apply for such a conveyance. While the state was the owner of the lands in Jamaica bay,

the railroad company, as the owner of the uplands, exclusively possessed the right to acquire them by a grant and that right would pass as appurtenance to the upland, [see above cases], which was included in the mortgage to the plaintiff; subject, only, perhaps, to its being, in fact, "convenient, or necessary, for the use, or for the purposes, of the railroad."

For these reasons, I advise the affirmance of the judgment appealed from.

VANN, WERNER, WILLARD BARTLETT, HISCOCK and CHASE, JJ., concur; CULLEN, Ch. J., absent.

Judgment affirmed, with costs.