FRANK C. MOENIG, Appellant, v. THE NEW YORK CENTRAL RAILROAD COMPANY and the VILLAGE OF TARRYTOWN, Respondents.

Second Department, April 17, 1919.

Waters and watercourses — effect of conveyance by warranty deed of land under navigable water not owned by grantors — effect of intervention of public street between uplands and navigable waters upon riparian rights — effect of title of railroad company to land under right of way upon riparian rights — riparian rights may attach to land acquired by railroad company for purposes other than right of way — estoppel.

The intervention of a public street between uplands and navigable water, where the title to the bed of the street is in the adjoining owners, does not deprive them of riparian rights.

Neither does the title of a railroad company to the land underlying its right of way destroy the riparian rights appurtenant to the upland in front of which it runs, especially where the purposes for which the right of way is granted exclude the implication of an intent to confer riparian rights.

The intervention of a railroad between the upland and the water may modify the riparian rights to the extent that the physical conditions compel, but does not destroy them.

A warranty deed purporting to convey to a railroad company a strip of land under navigable water operates by way of estoppel against the grantors or their privies, precluding them from asserting rights against the grantee although the grantors did not own the land under water.

A grant by the owner of uplands of land in front of his shore to a railroad company for purposes of passenger and freight stations, reserving access to and use of any wharf that the railroad company may erect on the land, carries with it the riparian rights not reserved, and the grantors and their successors, although they did not own the land under water at the time of the conveyance, are estopped thereby to deny an intention to convey the land with riparian rights, and have no interest or standing to challenge the validity of a subsequent act of the Legislature authorizing the Commissioners of the Land Office to convey the land to a municipality for park purposes.

APPEAL by the plaintiff, Frank C. Moenig, from a judgment of the Supreme Court in favor of the defendants, entered in the office of the clerk of the county of Westchester on the 25th day of February, 1918, upon the decision of the court after a trial at the Westchester Special Term.

The plaintiff brought this action in equity, asking the court to adjudge that as the owner of certain premises described in the complaint he is entitled, as against the defendants, to riparian rights in and over the land now or formerly covered by the waters of the Hudson river in front of his premises, and that an act of the Legislature of the State of New York (Laws of 1916, chap. 22) authorizing the Commissioners of the Land Office to grant certain lands under water to the village of Tarrytown is void. This action, which is one of six of a like nature and tried at the same time, resulted in a judgment dismissing the complaint on the merits, and the plaintiff appeals.

*Joseph B. Thompson* [*Frank D. Briggs, Ernest F. Griffin* and *W. L. Morse* with him on the brief], for the appellant.

*George H. Walker* [*Crosby J. Beakes* and *Alex. S. Lyman* with him on the brief], for the respondent railroad company.

*Hugh A. Thornton* [*William G. Given* with him on the brief], for the respondent village of Tarrytown.

BLACKMAR, J.:

At the time of the original location of the right of way of the Hudson River Railroad Company in 1847, Abraham Becker and David Jacobus, predecessors in title to the plaintiff, owned certain uplands adjacent to the Hudson river at Tarrytown, to which riparian rights were appurtenant. The railroad right of way was located in front of said premises two or three hundred feet outside of high-water mark, and was eighty-two and one-half feet in width. The title to the land under water over which the right of way was located was in the People of the State of New York, and the location of its line did not confer upon the railroad company any title to the same; but, at the most, an implied license to build along the course selected. (*N. Y. C. & H. R. R. R. Co.* v. *Aldridge*, 135 N. Y. 83.) In 1848 Becker and Jacobus executed and delivered to the railroad company a warranty deed that purported to convey to the company the strip of land under water upon which the right of way was located. In 1851 they executed and delivered a like deed which purported to

convey to the railroad company a plot of ground one hundred feet wide, then under water and lying to the east of the right of way, and another plot, to the west of the right of way, bounded " on the west by the Hudson River." As Becker and Jacobus did not own the land under water, these deeds conveyed no title to the railroad; but it is upon the effect of the grant of 1851 that this case, in our opinion, turns.

In 1850 the Legislature authorized the Commissioners of the Land Office to convey to the railroad company any land belonging to the State " which may be required for the purposes of their road." (Laws of 1850, chap. 140, § 25.) The railroad company, having in 1868, by appropriate proceedings, widened its right of way to a width of one hundred and sixty feet, applied to the Commissioners of the Land Office for a grant, and on the 26th of December, 1873, it received a patent of a strip of land underlying the right of way as widened in 1868. In 1860 one Seth Bird, a grantee of Becker and Jacobus, obtained from the Commissioners of the Land Office a patent for a tract of land originally under water, which was bounded to the west on the grant made by Becker and Jacobus to the railroad company, as above stated. For the land lying between that so patented to Seth Bird and that patented to the railroad company in 1873, no grant has been made by the State, and the title thereto still remains in the State, notwithstanding the Becker and Jacobus grant, unless it has been acquired by the railroad company by adverse possession. We do not, however, think it necessary to the disposition of this case to decide the question of adverse possession.

In 1858 Seth Bird and the railroad company agreed on the dedication to the public use for a highway, to be called Bird avenue, of a strip of land lying partly within the limits of the grant made by Becker and Jacobus to the railroad company, and partly on land originally under water, granted to Seth Bird in 1860. The plaintiff acquired, through mesne conveyances from Seth Bird, a lot of land fifty feet wide on the easterly side of and abutting on Bird avenue. On either side of plaintiff's premises are the premises of the plaintiffs in the other five sections. On its easterly side Bird avenue is lined with buildings, the ground floors of which are used for stores; to the west, across Bird avenue, is an open space, parked

and used for access to the railroad station; beyond, still to the west, are the railroad tracks, and still beyond are the waters of the Hudson river, where plaintiff claims riparian rights as appurtenant to his land lying on the easterly side of Bird avenue. Beyond, still further to the west, under water and adjacent to uplands to the north, which jut out into the river, lies the land that the act of the Legislature, the validity of which is challenged in this action, authorizes the Commissioners of the Land Office to grant to the village of Tarrytown for the purposes of a public park.

We do not think that the dedication of Bird avenue to public use has any bearing on the question, for the intervention of a public street between uplands and navigable water, where the title to the bed of the street is in the adjoining owners, does not deprive them of riparian rights. It has been so decided. (*Verplanck* v. *City of New York*, 2 Edw. Ch. 220; *People ex rel. Banks* v. *Colgate*, 67 N. Y. 512.) And no reason is perceived why the existence of public street easements should deprive the land over which the street runs of its riparian rights.

Neither does the title of the defendant railroad company to the land underlying its right of way destroy the riparian rights appurtenant to the upland in front of which it runs. (*Rumsey* v. *N. Y. & N. E. R. R. Co.*, 114 N. Y. 423; 133 id. 79; 136 id. 543; *Saunders* v. *N. Y. C. & H. R. R. R. Co.*, 144 id. 75.) This conclusion is reached from a consideration of the purposes for which the right of way is granted, which exclude the implication of an intent to confer riparian rights. The intervention of a railroad between the upland and the water may modify the riparian rights to the extent that the physical conditions compel, but does not destroy them.

There remains, then, to consider the effect of the grant of 1851 by Becker and Jacobus to the railroad company. This in fact did not operate to convey the title of the land described therein, because the grantors did not own it; but we apprehend that it has the same effect upon the rights of the grantors as against the grantee over the lands described as if it did. The grant was by deed with covenants of warranty and operated by way of estoppel against the grantors or their privies, precluding them from asserting rights against the grantee

inconsistent with the terms of the grant. If the plaintiff should now acquire from the State title to the land lying within the limits of the grant and not granted to the railroad company by the patent of December 26, 1873, it would immediately vest in the railroad company by estoppel as the result of the covenant of warranty. (*House* v. *McCormick*, 57 N. Y. 310.) As is said in Reeves on Real Property, section 1018, referring to estoppel by deed: " The ordinary working of an estoppel, thus produced, is that the grantor and those in privity with him are precluded to assert that no title passes to the grantee by virtue of the deed." We think, therefore, that as between the parties and privies the case is the same as if the deed conveyed a title.

The court has found, at the request of plaintiff, that the grant was made by Becker and Jacobus to the railroad company " for the purpose of providing the said railroad company with its convenient and necessary accommodations for the passenger and freight station at or near said point." By the same deed there was also conveyed land to the west of the right of way and lying between it and the Hudson river, whatever that may mean, and the grantors therein reserved to themselves, their heirs and assigns, " the privilege of loading or unloading any vessel with merchandise or other property on any wharf which the said company may at any time construct on said last described piece of land under water."

The question is thus clearly presented, whether a grant by the owner of uplands, of land in front of his shore to a railroad company for purposes of passenger and freight stations, reserving access to and use of any wharf that the railroad company may erect on the land, carries with it the riparian rights not reserved.

The question was considered and left undecided in *Matter of City of Buffalo* (206 N. Y. 319). The opinion of Judge WERNER, who wrote for the court, seems to favor the doctrine that a railroad is a riparian owner as to uplands which it holds adjacent to its right of way and which are used for a locomotive house, switching, storage and the like. With him Chief Judge CULLEN in a memorandum, and Judges GRAY and HISCOCK concurred, while Judges HAIGHT, VANN and COLLIN dissented. Chief Judge CULLEN in his concurring

memorandum wrote: " It is theoretically possible at least that the railroad company may have riparian rights attached to certain of the pieces of land .owned by it. It is equally possible that they have no rights of the kind. The question depends on the terms and character of the conveyances by which the lands were granted to it." Judge Werner wrote: " The question would seem to have been answered in the recent case of *Naylor* v. *N. Y. C. & H. R. R. R. Co.* (196 N. Y. 544), where this court affirmed a judgment in favor of the defendant, upholding its claim to riparian rights as against an upper upland owner. There the land lay outside of the railroad right of way and was used for a freight yard. * * * It is possible, in view of the fact that the only opinion in the *Naylor* case was written in the Appellate Division upon demurrer to the complaint and that the affirmance in this court was without opinion, that this particular phase of the question of a railroad company's position in respect of riparian rights may be considered as not yet definitely and finally settled, and we, therefore, leave it without further discussion until it is directly presented." The opinion in the Appellate Division was written by Presiding Justice Jenks (119 App. Div. 24). The case was subsequently tried by Justice Mills, now a member of this court, who wrote an opinion, not published, which held that the intent of the parties to the conveyance was that the land should be held by the railroad company in fee simple absolute without any riparian rights being reserved to the original grantors or their successors. In accordance with this conclusion is, we think, *People's Trust Co.* v. *Schenck* (195 N. Y. 398) and *Matter. of N. Y. C. & H. R. R. R. Co.* (77 id. 248). The weight of authority, therefore, is that riparian rights may attach to land acquired by railroad companies for purposes other than the right of way, and this conclusion seems to be consistent with reason and justice. The doctrine that riparian rights do not attach to lands granted to a railroad company for right of way is founded on the reason that riparian rights would have no value or use attached to a strip of land used only for trains passing to and fro, and that the chartered purposes of a railroad would not include this use for other purposes. On the other hand, riparian rights have great value in connection with the legitimate operation of

the road in receiving and discharging freight and passengers by water transportation. By far the most important of riparian rights is access to navigable water by wharf or dock to connect the mainland with carriers by water. This right of access is of peculiar value to railroad carriers, in order that interchange of traffic may be had with vessels. The deed of 1851 from Becker and Jacobus to the defendant railroad company granted the land for the purposes of a freight and passenger station, and the reservation expressly recognized that one portion of the grant was to enable the company to erect wharfs or docks to connect with river navigation. We think that this grant was intended to convey the land with riparian rights and that the plaintiff is estopped by the deed as between the parties to deny that it had that effect.

If we are right in this conclusion, the plaintiff has no interest or standing to challenge the validity of the act authorizing the Commissioners of the Land Office to convey the land to the village of Tarrytown for park purposes.

The judgment should be affirmed, with costs. That portion of the 5th finding of plaintiff's proposed findings contained in the last sentence thereof is reversed. That portion of the 15th finding of plaintiff's proposed findings which is contained in the words " and said lands and the riparian rights appurtenant thereto being of great value " is reversed. The 17th of plaintiff's proposed findings of fact is found, and the 8th of plaintiff's proposed conclusions of law is found.

Present — MILLS, RICH, BLACKMAR, KELLY and JAYCOX, JJ.

Judgment unanimously affirmed, with costs. That portion of the 5th finding of plaintiff's proposed findings contained in the last sentence thereof is reversed. That portion of the 15th finding of plaintiff's proposed findings which is contained in the words " and said lands and the riparian rights appurtenant thereto being of great value " is reversed. The 17th of plaintiff's proposed findings of fact is found, and the 8th of plaintiff's proposed conclusions of law is found. Order to be settled before Mr. Justice BLACKMAR.